Good morning, Your Honors. My name is Charles Naylor. I'm representing Valerie Russo in this matter, an appellant in this matter, and this morning I would like to first talk about the Jones Act negligence issues, second about unseaworthiness, and third about the state court claims. Going directly to the Jones Act negligence cases, it's our position that while the principal case, Gottschall, in this case, provided an appropriate framework for analyzing an infliction of emotional distress cases such as this, it didn't provide all the answers, and because of the unique nature of this case, that is, it's a direct victim sexual harassment case, we think that the answer we provided in the jury's instruction, we provided in the court's instruction. But you do agree that the instruction that the district court gave was consistent with Gottschall? Say that again. The instruction that the district court gave the jury was consistent with Gottschall, was it not? Well, generally consistent with Gottschall. Where does it depart from Gottschall? I mean, I know you're arguing your case is different and therefore more is needed. Well, my question is, was the instruction that the district court gave in any way inconsistent with Gottschall? Well, I think it gives a double dose of immediate in Gottschall because of the way the instruction was saying it. But this instruction doesn't it track Gottschall? Doesn't the instruction track Gottschall? Gottschall talks about zone of danger and then speaks of, descriptive of it, immediate risk of physical harm. This instruction included both phrases. Which were both in Gottschall. Now, I understand your shouldn't apply. That wasn't what I was asking you. I was just asking, this instruction is faithful to Gottschall. Gottschall may be distinguishable. You may be entitled to more. But if this were a straight Gottschall case, the same facts, wouldn't this instruction be correct? Well, maybe if the facts are different. But where you're dealing in this situation, I think the court's use of zone of danger and immediate risk of physical harm has the effect of, as I say, you know, making a double dose of. But don't those phrases both appear in the Gottschall decision? Say that again for me. Doesn't the court in Gottschall refer both to zone of danger and immediate physical harm? Well, it uses both of those terms. But I don't think it's, so the question, it's a zone of danger test. But that doesn't mean the term zone of danger and the, this course, when it looked at the Stacey case, took zone of danger to mean immediate risk of physical harm. And so when you put both of those terms in there, you're kind of saying if she was in the immediate risk, if she was placed in immediate risk of physical harm and feared immediate risk of physical injury, it's a the wolf was at the door, that he was capable of blowing the door down, that he intended to blow the door down. I'm just having trouble understanding your argument. Gottschall may be wrong. We can't fix it. But those two phrases both appear in Gottschall. And the judge gave an instruction derived from the Gottschall decision. I understand your argument that in sexual harassment cases something more is required. Right. But we're spending a lot of time on a preliminary matter, and I'm not sure I understand your answer. At least, this instruction was faithful to Gottschall, was it not? Well, I've tried to answer as best I can. Okay. I think using both, I think including the term zone of danger and including immediate risk of physical harm puts a double emphasis on the term immediate. And especially in the context of a case like this, I think that creates an additional problem. So what should, in your view? Well, I think what should it be is this. I think the court in, you know, in Nelson versus Metro Commuter, the court there talked about the problems with the term immediacy and looked at that and said, does that mean temporal immediacy? Probably not. If it doesn't mean to connote consideration of some degree of temporal closeness, some degree of spatial proximity, some degree of the likelihood of significance of physical harm. Maybe some of all of us. When you get to these sexual harassment types of cases, which really are fundamentally different than the issues that were presented at, in Gottschall, because this is a direct injury and those situations were not. Let me try this differently because I'm solving difficulty. Your Jones Act claim by definition is a negligence claim, right? Yes. So it's for negligent infliction of emotional distress. Correct. The mechanism used to inflict that emotional distress in this case, you say is sexual harassment. Right. But the claim is not a sexual harassment claim. The claim is for negligent infliction of emotional distress. Yes. The mechanism, however, of the negligence is sexual harassment by the captain of an unlicensed aircraft. Right. But therefore, why then doesn't the requirement in Gottschall that there either be physical injury or that you be in a zone of danger from physical injury apply? I mean, you're stuck with the Jones Act here because of history and other stuff, but don't you have to shoehorn it into that negligent infliction of emotional distress? Do you see where the negligence claim is different? Sure. And that's what the court did in Wahartia, which is the case that we cited and on which our jury instruction was based. And what the court did there was to take a look at the that with respect to these kinds of cases, the the real question is, is whether depends entirely on whether the actual or threatened physical impact placed plaintiff in reasonable apprehension of physical harm. And that really is a way of talking about the zone of danger test. The physical impact here was a pat on the butt. Right. It is what was a was a pat on the butt. No. Well, OK. Yes. There's no other physical impact delay. So yes. OK. So physical impact. You know, right. We understand that that's an issue and that's been problematic. It hasn't the courts jurisprudence on physical impact seems to require some form of intrinsic harm associated with the physical. But you do agree that this physical impact your client so testified didn't didn't place her in imminent fear of physical harm. It isn't the physical impact that placed her in fear. Right. OK. It is the other circumstances of this which frightened her so that she was putting a door, a door, a chair up against her door to keep the captain of the ship out. Now, I want to I want to ask you one of the I know you want to talk about your other class. I want to ask you another question about your Jones Act claim. It went to the jury. Let's assume the jury was appropriately instructed for a moment. I know you think it wasn't. The jury was told that the captain was an agent. The only claim was really that the captain did this, not that the not that the owner of the ship did it. The captain was an agent. The jury found that the captain acted during the course and scope of his employment. So it found out that the so you didn't lose that because of the finding of non-agency, but it found against you, against your client. That to me necessarily means either they find that he didn't negligently inflict emotional distress or that your client suffered no damage from his actions. Isn't that don't we have to assume that from the jury's findings? I'm sorry, I lost the You think the jury was improperly instructed? I do. But let's assume it wasn't improper. Let's assume it was properly instructed. What what do we take then from the jury's verdict? Didn't the jury then necessarily find that that the captain didn't do what you said he did? Or alternatively, that even if he did it, your client didn't suffer any distress from it. I think the jury instruction, by the way, it was phrased characterize the situation so that the jury would need to perceive that the captain was outside the door and prepared to strike. And they didn't. And the evidence, but I asked you, I asked you to assume that the instruction was accurate. So my question is, if we reject your argument that the instruction was inaccurate, we now have a jury verdict that rejects your theory of the case. As a matter of fact, what does that do to your other claims? In other words, to have a seaworthiness claim, you've got to show more than negligence. You've got to show a savage disposition or something like that. And if the jury found that the captain wasn't even negligent, how can we find a savage disposition? Well, see, I just don't think that we're there with that situation because of the way the jury instruction is constructed. But you keep you keep changing my hypothetical. You keep saying the jury instruction is wrong. If the jury instruction is wrong, you win. I'm asking a different question. If the jury instruction was correct, doesn't the jury finding really bar any of your other claims? Because didn't the jury necessarily find that the captain didn't? No, it was contested. He said, I didn't do any of this stuff. Your client said he did. No, because I don't think so. Because I don't believe that the unseaworthiness cause of action requires physical violence. I don't believe it does. It requires a savage disposition, does it not? It requires a negligent disposition. How could he have a problematic disposition if he wasn't even negligent? Well, okay, let me conceive this because I'm almost out of time now and I've got a couple of issues I would really like to talk about. If the captain wasn't negligent, if he didn't do what we said, then there's no liability under negligence or unseaworthiness. So I've got very little time, and so let me focus on the unseaworthiness causes of action. It's our opinion that the court misapplied the law because he required plaintiff to show a savage and vicious attack, and that just isn't the law. Do you have a case in which a seaworthiness claim has been upheld where there wasn't a physical attack? Well, but the problem is that... I couldn't find one, by the way. Yeah, right. The problem is that the courts complete the attack cases and draw facts from those instead of looking underneath it for what the reasoning is in support of it. I mean, the cases are clear, but what we're looking for is the disposition of the assailant, not the acts. And there is a case that says that rather specifically... I'm sorry, I can't find it right now, but that the issue is not the acts of the perpetrator, but the put the emphasis in the wrong spot because they're analyzing it naturally looking for incidents, indicia of an assaultive personality. Can you have an unseaworthiness claim if the captain is just really mean? Berates, belittles, degrades, causes great emotional distress, but never makes a physical contact with someone. Can you have an unseaworthiness... Physical contact is required, and I don't think there's anything in the analysis that... So your answer to my question is yes. It requires evidence that shows a malignant heart, so to speak. Captain Bly, you have Captain Bly. He doesn't beat the shipmates, but he's really nasty to them. They have an unseaworthiness claim? Not just because he's really nasty. These situations, if you look... He belittles them. He calls them names. I mean, make it whatever you want. Can you have an unseaworthiness claim simply because the captain is really mean? No, not just that. It goes to more. You have to have indications of the person's disposition. So in this case, we've got a situation where the captain of a tanker ship lures a person aboard the ship, lying to her about his intentions, his feelings, and then behaves in a way that is so outrageous that it puts the cook... I mean, the behaviors of this captain on that ship wouldn't be tolerated by any shoreside employment, and in fact, they weren't tolerated by APL. They fired him promptly over this situation. Equal in disposition and seamanship to the ordinary men in the calling, the behaviors exemplified by the captain in this case can't fit that. And I haven't even had... You've passed your time. Thank you very much. Now we'll hear from the appellee. Good morning, Your Honors. Albert Peacock on behalf of the defendant and appellee APL Services. In this appeal, the plaintiff asked this court to create brand new law in four separate areas. First, the appellant asked the court to change the Jones Act and, in particular, the Gottschall decision by the Supreme Court on what elements are required to prove negligent infliction of emotional distress. And what the appellant asked this court to do is to disregard the Gottschall decision, which requires either a physical impact or an immediate threat of physical harm, and to go back to the Third Circuit genuineness test, which was rejected by the court in Gottschall. Was her claim of emotional distress genuine under the facts of this case? And that's not the standard that the Supreme Court set. So you think the Supreme Court adopted a narrower standard than the common law standard. Let's assume we weren't at sea here and this occurred. Would she have a claim for negligent infliction of emotional distress? Yes, she would, Your Honor. So you think that the Gottschall standard is the Jones Act standard, if you will, is narrower than the common law standard? Let me backtrack on what I said before. In some states, yes. But what the Supreme Court did in Gottschall... At least in their all of the state common law cases on negligent infliction of emotional distress. And they identified three different tests that various states applied. One was the physical impact requirement, which was very strict, which some states apply. They found the zone of danger test, which other state courts applied, which was a lesser standard. And then they had the third party witness standard, for lack of a better term. And it evaluated the benefits and the detriments of each of those. What is the third party witness standard? That has to do with where somebody witnesses the death or serious injury of another party. And you have to be close, closely related, and you have to observe it personally. Correct. And we saw that in the Chan case in the Ninth Circuit. And between those three standards, the Supreme Court chose for application in the Jones Act, the medium zone of danger test. And they said, under the common law that the states use under the zone of danger test, these are the two elements that are required. Physical impact, or immediate or imminent, were the two words the Supreme Court used. Threat of physical harm. And that was the standard that they chose to apply to the Jones Act. No court has carved out sexual harassment as somehow having a different standard for negligent emotion. So what claim, in your view, does a crew member who is sexually harassed, assume it occurs at sea, have in the absence of damage? In the absence of physical damage, they would have to show that there was an imminent threat of physical harm to them, and then they could recover under the Jones Act. So there is no, so I'm just, your opponent pled several causes of action, in part because this is an unusual circumstance. So what you're saying is that if a female crew member is sexually harassed at sea by she doesn't have a claim? No. Title VII, your honor. Title VII is the federal law on sexual harassment and wrongful termination. Title VII is federal law. It applies aboard U.S. flagged vessels on the high seas. That would have been a claim beyond the Jones Act. It could have, but wasn't for whatever reason, asserted in this particular case. Instead... Let me ask you a If there's evidence that the plaintiff reasonably believed herself to be in danger of being groped by the captain, is that sufficient physical injury? There are two parts to that question. First, I don't believe that reasonable apprehension is the test under Gottschall. I believe Gottschall sets a standard where the jury has to decide whether there was an objective imminent threat of harm. All right, let's say there was. The objective reasonable threat of groping. Under the case law that is applied, the Gottschall test to sexual harassment, the answer would be no. That a mere groping, unless it was a groping that was intended to harm the female seaman and did harm, would not... Doesn't groping harm a female seaman psychologically? I believe it does, but I don't believe that that's the current state of the law when it comes to the test. So it has to be a physical harm that harms physically, not psychologically. Jones Act limitation. Correct. But the jury wasn't so instructed, was it? In other words, we can argue about whether or not a jury verdict in favor of Ms. Russo would have been supported by the evidence. But as I read the jury instruction, it doesn't parse physical harm the way Judge Baez's question does, does it? No, it does not. It just simply says you either have to have suffered physical harm or be in the zone of danger of physical harm. Imminent risk of physical harm. Right. And they argued to the jury she was an imminent risk of physical harm. Right. And we argued to the jury and presented evidence that not only was she not at risk because there was no history of they got to say she was really worried. She was in risk of physical harm because this guy, if she unlocked the door, was going to hurt her. Correct. And the instruction would have allowed the jury under those circumstances to find in her favor, would it not? Correct. It would have, Your Honor. And they didn't. Correct. What do you make of the jury verdict? Is it a finding of no harm or is it a finding of no negligence? I believe there was a finding of no negligence. And I realized this put the special jury verdict in front of the court. Right. But I read the special jury verdict. It's in the record. And the jury found that the captain was an agent so that his actions would be attributable to APL. Correct. But they nonetheless found in favor of APL. So I'm trying to figure out what to make of that. Does it mean they found that the captain wasn't negligent? Does it mean that they found that even if he was, she really wasn't harmed? What's the effect of that jury verdict? My view, Your Honors, is that they didn't believe that she was at imminent risk of physical harm or that he was ever a threat to her. That was the evidence presented by us. Assume that that's the case. What does that do with respect to the seaworthiness claim? The seaworthiness claim, again, was decided by summary judgment as opposed to the jury based upon the evidence presented in summary judgment motion. Let me just make the question more specific. Let's assume for a moment that there can be a seaworthiness claim if you don't suffer physical harm, that you can have a seaworthiness claim for emotional harm. I'm trying to figure out whether or not any emotional harm claim remains in this case in light of the jury verdict, which found that there wasn't a negligent infliction of emotional distress. I think the answer is no. But I also would point out there is not a single case that... And your opponent says that, so I'm just... He says, of course, there's never a case when you're making a new claim, so... There's no case that says that emotional distress without physical harm or a physical attack is allowed under the common law unseaworthiness doctrine. So let me ask you the question I asked your colleague. Let's assume you have the worst, meanest captain in the world who has a ship that doesn't beat people. He doesn't assault them. No seaworthiness claim by members of the crew? No seaworthiness claim under existing law, your honors. Even if he, you know, degrades them, berates them, causes them great emotional distress, not just negligently, but intentionally? Correct. Under existing law, unseaworthiness in the case of a crew member requires a physical assault and over and above the physical assault, the case law requires that that assault be vicious, be evil. Well, it requires that it result from a savage disposition of the assaulter. Correct. But there are cases in which there were physical fights and even though there was a physical attack, the courts have determined unseaworthiness didn't apply. It has to go beyond the normal risks of being at sea. Correct. And typically those cases require either a long history of violence on the part of the attacker or the use of a weapon or a very, very severe injury. And none of those apply in this particular case. And that's another area where the appellant in this case is asking this court to create a new standard, to lower the bar that was set by the Supreme Court and has been followed by the Ninth Circuit repeatedly when it comes to unseaworthiness as a result of the disposition of a fellow crew member. But you're saying it says two elements. One, he has to have a savage disposition that has to be physical injury. Yes, Your Honors. The other area that the appellant asked this court to change the law in is whether or not California state law applies to a U.S. flagged vessel on the high seas. And the California Supreme Court over 100 years ago said that California law, while it may apply extraterritorially in the absence of preemption or some violation of the Commerce Clause of the U.S. Constitution, will not apply extraterritorially unless the intent of the legislature is clear. So in the Aubrey case, I think I'm pronouncing it correctly, Judge Pregerson's decision, what was the indication that the California legislature wanted its law to apply? I don't know. I don't recall specifically what was cited in the legislation. There's a lot of discussion here about whether the state interests outweigh the interests of uniformity in maritime law. But what I can't find in that case is any analysis of the intention of the state legislature. I don't recall either, Your Honors, but to say, first off, that was not a FEHA case. And in this case, we're talking about FEHA. But also in that case, the court pointed out that there is a debate or a dispute between the state of California and the federal government over who owns the Santa Barbara Channel. So we're not talking about the high seas off of Yokohama, Japan here. We're talking about local waters. We're also talking about workers who live in California, who are protecting the California coast from oil spills, who leave and return to California without stopping in any foreign ports or even any ports outside of the state of California. So if California, let's assume the California legislature, in passing the acts under which claims are made here, both the constitutional and statutory ones, had said, and we mean these to apply to injuries that occur on California vessels on the high seas, would that be legal? Would that violate the, you know, would that conflict with uniform maritime law? It would. And then we would be arguing federal preemption here as opposed to the intent of the California legislature. The district court never reached that issue. That's correct. Although he did, I think, say at some point, if these were to apply, there might be difficult issues. Exactly. And that's what many of the courts, including the California Supreme Court back in 1917, said. This could be a problem preempted by or conflicting with federal law. We don't have to address that. One other area that the appellant is trying to change the law, and that goes to something that you just said, which is a California vessel. This is not a California vessel. This is a U.S.-flagged vessel. What the appellant wants the court to find is that by selecting a California hailing port, you know, the city below the name of the ship on the stern, that that somehow is a choice of law selection, that somehow by choosing Oakland as opposed to Las Vegas or some other hailing port... You wouldn't have difficulty moving in and out of Las Vegas with this ship, would you? But you see many recreational boats that put Lake Havasu or Lake Las Vegas on their transoms as the hailing port. That doesn't mean they've chosen that state's law to apply. This is a U.S. Coast Guard-regulated vessel. It is a U.S.-flagged vessel. And as a result, U.S. federal law, including Coast Guard regulations, apply to it. Simply because they put the word Oakland underneath the name of this ship doesn't mean that APL has chosen California law to apply to all of the sailors aboard that vessel, wherever that vessel is. Although I take it your argument is that even if this were a California vessel, the result would be the same. Correct. Because the legislature didn't intend the law to apply to it while on the high seas. Correct. And every court that has addressed the issue of whether FEHA applies extraterritorially or not, including the Ninth Circuit, in a decision in late March of this year, have found there is no legislative intent to apply FEHA outside of California. Unless there's any further questions? Thank you, Your Honors. All right. Thank you very much. The case of Russell v. APL Marine Services is submitted and we'll go to the next case.
judges: Bea, Hurwitz, Motz